**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PRATHIK PATEL, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | **DEMAND FOR JURY TRIAL** |
| LULULEMON ATHLETICA INC., CALVIN MCDONALD, and MEGHAN FRANK, | |
| Defendants. | |

Plaintiff Prathik Patel ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by lululemon athletica inc. ("Lululemon" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Lululemon; and (c) review of other publicly available information concerning Lululemon.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a class action on behalf of persons and entities that purchased or otherwise acquired Lululemon securities between December 7, 2023 and July 24, 2024, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Lululemon is principally a designer, distributor, and retailer of technical athletic apparel, footwear, and accessories. The Company reports sales and revenue in three geographic segments: Americas, China Mainland, and Rest of World. The Americas represent the majority of the Company's revenue, representing 79% of net revenue in fiscal year 2023, 94% of net revenue in fiscal year 2022, and 85% of net revenue in fiscal year 2021.

3.     On March 21, 2024, after the market closed, the Company issued a press release announcing its financial results for the fourth quarter and full year ended January 28, 2024, revealing the Company's growth was stagnating in the Americas region. Specifically, net revenue in the Americas grew 9% in the quarter and 12% in the fiscal year 2023, short of the 29% growth in the year-ago period and 12% growth in the previous quarter.

4.    On this news, the Company's share price fell $75.65, or 15.80%, to close at $403.19 per share on March 22, 2024, on unusually heavy trading volume.

5.    On July 24, 2024, at approximately 3:05 p.m. Eastern, *Bloomberg* reported that several analysts posited Lululemon's inventory allocation seemed inconsistent, particularly as to the Breezethrough legging launched earlier that month, both in-store and online.

6.    On this news, the Company's stock price fell $9.31, or 3.3%, to close at $272.06 per share on July 24, 2024, on unusually heavy trading volume.

7.    On July 25, 2024, before the market opened, *Bloomberg* reported that a Lululemon spokesperson told the agency that the Company "made the decision to pause on sales [of the Breezethrough yoga wear] for now to make any adjustments necessary to deliver the best possible product experience."

8.    On this news, the Company's share price fell $24.74, or 9.09%, to close at $247.32 per share on July 25, 2024, on unusually heavy trading volume.

9.    Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company was struggling with inventory allocation issues and color palette execution issues; (2) that, as a result, the Company's Breezethrough product launch underperformed; (3) that, as a result of the foregoing, the Company was experiencing stagnating sales in the Americas region; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

10.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

14.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

15.     Plaintiff Prathik Patel, as set forth in the accompanying certification, incorporated by reference herein, purchased Lululemon securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16.     Defendant Lululemon is incorporated under the laws of Delaware with its principal executive offices located in Vancouver, British Columbia. Lululemon's common stock trade on the NASDAQ exchange under the symbol "LULU."

17.     Defendant Calvin McDonald ("McDonald") was the Company's Chief Executive Officer ("CEO") and Director at all relevant times.

18.     Defendant Meghan Frank ("Frank") was the Company's Chief Financial Officer ("CFO") at all relevant times.

19.     Defendants McDonald and Frank (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Lululemon is principally a designer, distributor, and retailer of technical athletic apparel, footwear, and accessories. The Company reports sales and revenue in three geographic segments: Americas, China Mainland, and Rest of World. The Americas represent the majority of

the Company's revenue, representing 79% of net revenue in fiscal year 2023, 94% of net revenue in fiscal year 2022, and 85% of net revenue in fiscal year 2021.[1]

**Materially False and Misleading**

**Statements Issued During the Class Period**

21.    The Class Period begins on December 7, 2023. On that day, Lululemon announced its third quarter 2023 financial results in a press release for the period ended October 29, 2023, which reported the Company's net revenue "increased 19% to $2.2 billion" and income from operations "decreased 4% to $338.1 million." The press release further stated, in relevant part:[2]

> Calvin McDonald, Chief Executive Officer, stated: "This was another **strong quarter for lululemon as our innovative product offerings** and community activations continued to **powerfully resonate with our guests globally**. . . . "

22.    On December 7, 2023, the Company submitted its quarterly report for the period ended October 29, 2023 on a Form 10-Q filed with the SEC which affirmed the previously reported financial results (the "3Q23 10-Q"). The 3Q23 10-Q purported to warn of the risks to the Company, stating, in relevant part:

> *If* we are unable to anticipate consumer preferences and successfully develop and introduce new, innovative, and differentiated products, we may not be able to maintain or increase our sales and profitability.

23.    The 3Q23 10-Q, asserted that the Company effectively manages inventory allocation, stating in relevant part:

> **The timing and cost of our inventory purchases will vary depending on a variety of factors such as revenue growth, assortment and purchasing decisions, product costs including freight and duty, and the availability of production capacity and**

---

[1] The Company's fiscal year ends on the Sunday closest to January 31 of the following year. The Company refers to the fiscal year ended January 28, 2024 as "2023," the fiscal year ended January 29, 2023 as "2022," and the fiscal year ended January 30, 2022 as "2021."

[2] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

***speed.*** Our inventory balance as of October 29, 2023 was $1.7 billion, a decrease of 4% from October 30, 2022.

24.     On January 8, 2024, the Company issued a press release increasing revenue and earnings expectations for the fourth fiscal quarter of 2023 ending January 28, 2024, stating in relevant part:

> lululemon athletica inc. (NASDAQ:LULU) today announced that, for the fourth quarter of fiscal 2023, the Company now expects net revenue will be in the range of $3.170 billion to $3.190 billion, representing a 14% to 15% increase compared to the fourth quarter of fiscal 2022. The previous guidance range was $3.135 billion to $3.170 billion.

> Diluted earnings per share are now expected to be in the range of $4.96 to $5.00 for the fourth quarter of fiscal 2023 compared to the Company's previous guidance range of $4.85 to $4.93.

> The Company now expects gross margin to be in the range of 58.6% to 58.7% for the fourth quarter of fiscal 2023, compared to its previous guidance of 58.3% to 58.6%. There is no change to the Company's previous guidance for selling, general, and administrative expenses or effective tax rate.

> Meghan Frank, Chief Financial Officer, commented: "We are pleased with our performance during the holiday season, as guests continue to respond well to our innovative and versatile product offerings. ***Our sales trend remains balanced across channels, categories, and geographies, enabling us to raise our guidance for the fourth quarter and close out another strong year***."

25.     The above statements identified in ¶¶ 21-24 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the Company was struggling with inventory allocation issues and color palette execution issues; (2) that, as a result, the Company's Breezethrough product launch underperformed; (3) that, as a result of the foregoing, the Company was experiencing stagnating sales in the Americas region; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

26.    The truth began to emerge on March 21, 2024, after the market closed, when Lululemon disclosed stagnating growth in the Americas region, and North America specifically. On that date, the Company issued a press release announcing its financial results for the fourth quarter and full year ended January 28, 2024. Therein, Lululemon reported net revenue in the Americas grew 9% in the quarter and 12% in the fiscal year 2023, short of the 29% growth in the year-ago period and 12% growth in the previous quarter. Specifically, the Company reported the following, in relevant part:

**For the fourth quarter of 2023, compared to the fourth quarter of 2022:**
• Net revenue increased 16% to $3.2 billion.
    –Americas net revenue increased 9%.
                    *                *                *
    –Americas comparable sales increased 7%.
                    *                *                *
**For 2023 compared to 2022:**
•Net revenue increased 19% to $9.6 billion, or increased 20% on a constant dollar basis.
    –Americas net revenue increased 12%.
                    *                *                *
    –Americas comparable sales increased 8%, or 9% on a constant dollar basis.

                    *        *        *

During the fourth quarter, *we saw continued momentum across our channels, geographies, and merchandise categories*, driven by our teams around the world. As we step into 2024, we are focused on the *significant opportunities ahead for lululemon as we navigate the dynamic retail environment and deliver for guests through innovative new products and brand activations*."

27.    On the same date, the Company held an earnings call to discuss the fourth quarter and full year ended January 28, 2024 financial results, wherein the Defendant McDonald stated, in relevant part:

As I mentioned, *our sizing in particular in zero to four is something we're chasing into. Color, where we had color, it performed well. And honestly, we just did not have enough.* And both of these attributes over-index in the U.S., which is where I see the opportunity. And we're going to continue to play offense in the market. The innovation product pipeline remains very strong for this year and we have some exciting brand initiatives in addition.

Where that's showing up? ***We're seeing a slowdown in traffic in the U.S.,*** but it's still positive and conversion is down slightly. And I ***link that to some of the product opportunities we have in the sizing and color, which as I said, we will -- we are chasing*** until we will get stronger through the quarters.

28.      On this news, the Company's share price fell $75.65 or 15.80%, to close at $403.19 per share on March 22, 2024, on unusually heavy trading volume.

29.      On March 21, 2024, the Company submitted its annual report for the period ended January 28, 2024 on a Form 10-K filed with the SEC (the "FY23 10-K"). The FY23 10-K affirmed the previously reported financial results and purported to warn of the risks to the Company, stating, in relevant part:

> ***If*** we are unable to anticipate consumer preferences and successfully develop and introduce new, innovative, and differentiated products, we may not be able to maintain or increase our sales and profitability.
>
> *          *          *
>
> Our results of operations ***could*** be materially harmed ***if*** we are unable to accurately forecast guest demand for our products.

30.      The FY23 10-K further asserted that the Company effectively manages inventory allocation, stating in relevant part:

> ***The timing and cost of our inventory purchases will vary depending on a variety of factors such as revenue growth, assortment and purchasing decisions, product costs including freight and duty, and the availability of production capacity and speed.*** Our inventory balance as of January 28, 2024 was $1.3 billion, a decrease of 9% from January 29, 2023. We expect our inventories to decrease during the first half of 2024 compared to the first half of 2023, and then increase in the second half of 2024 compared to the second half of 2023.

31.      On April 25, 2024, the Company published its 2023 Annual Report which touted the Company's "***impressive pipeline of product innovation***" and the Company's ability to execute on product allocation and launches, stating in relevant part:

We believe one of our competitive advantages is our ability to consistently bring newness and innovation into our assortment, and that our proprietary fabrics, innovative designs, and functional technology set us apart.

\*          \*          \*

Our design and development team continues to source technically advanced fabrics, with new feel and fit, and craft innovative functional features for our products. ***Through our vertical retail strategy and direct connection with our customers, whom we refer to as guests, we are able to collect feedback and incorporate unique performance and fashion needs into our design process***. In this way, we believe we are better positioned to address the needs of our guests, helping us advance our product lines and differentiate us from our competitors.

\*          \*          \*

***Our operations in the Americas are core to our business and we aim to continue to grow our net revenue in this market through ongoing product innovation*** and by building brand awareness.

32.    On May 21, 2024, the Company issued a press release which announced the Company was "implementing an updated and more integrated organizational structure," which was "intended to support the company's near- and long-term growth plans***, accelerate product innovation, and further enable its go-to-market strategies.***" The press release quoted Defendant McDonald claimed that "***the new structure will enable us to solve for the unmet needs of our guests in a more efficient, unique, and powerful way***."

33.    On June 5, 2024, the Company announced its first quarter 2024 financial results in a press release for the period ended April 28, 2024, which reported the Company's revenue "increased 10% to $2.2 billion" and income from operations "increased 8% to $432.6 million." The press release further stated, in relevant part:

***Guests responded well to our product innovations across categories, and we are pleased by the progress we are making to optimize our U.S. product assortment.*** Looking ahead, we continue to have a significant runway for growth and are confident in our team's ability to powerfully deliver for our guests in 2024 and beyond.

34.    On June 5, 2024, the Company submitted its quarterly report for the period ended April 28, 2024 on a Form 10-Q filed with the SEC (the "1Q24 10-Q"). The 1Q24 10-Q purported to warn of the risks to the Company, stating, in relevant part:

> *If* we are unable to anticipate consumer preferences and successfully develop and introduce new, innovative, and differentiated products, we may not be able to maintain or increase our sales and profitability.

35.    The 1Q24 10-Q further asserted that the Company effectively manages inventory allocation, stating in relevant part:

> ***The timing and cost of our inventory purchases will vary depending on a variety of factors such as revenue growth, assortment and purchasing decisions, product costs including freight and duty, and the availability of production capacity and speed.*** Our inventory balance as of April 28, 2024 was $1.3 billion, a decrease of 15% from April 30, 2023.

36.    The above statements identified in ¶¶ 26-27, 29-35, were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the Company was struggling with inventory allocation issues and color palette execution issues; (2) that, as a result, the Company's Breezethrough product launch underperformed; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

37.    On July 24, 2024, at approximately 3:05 p.m. Eastern, Bloomberg analysts reported that Lululemon's new Breezethrough leggings launch was "raising concerning", noting that the launch had suffered from "inconsistent" inventory allocation and pricing, with "certain locations carr[ying] Breezethrough leggings while others didn't carry the new line," suggesting "ongoing allocation-related issues."

38.     On this news, the Company's stock price fell $9.31, or 3.3%, to close at $272.06 per share on July 24, 2024, on unusually heavy trading volume.

39.     On July 25, 2024, before the market opened, *Bloomberg* reported that a Lululemon spokesperson told the agency that the Company "made the decision to pause on sales [of the Breezethrough yoga wear] for now to make any adjustments necessary to deliver the best possible product experience."

40.     On this news, the Company's share price fell $24.74, or 9.09%, to close at $247.32 per share on July 25, 2024, on unusually heavy trading volume.

## **CLASS ACTION ALLEGATIONS**

41.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Lululemon securities between December 7, 2023 and July 24, 2024, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

42.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Lululemon's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Lululemon shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Lululemon or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

43.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

44.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

45.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Lululemon; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

47.     The market for Lululemon's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Lululemon's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Lululemon's securities relying upon the integrity of the market price of the Company's securities and market information relating to Lululemon, and have been damaged thereby.

48.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Lululemon's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Lululemon's business, operations, and prospects as alleged herein.

49.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Lululemon's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

**LOSS CAUSATION**

50.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

51.     During the Class Period, Plaintiff and the Class purchased Lululemon's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

**SCIENTER ALLEGATIONS**

52.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Lululemon, their control over, and/or receipt and/or modification of Lululemon's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Lululemon, participated in the fraudulent scheme alleged herein.

**APPLICABILITY OF PRESUMPTION OF RELIANCE**
**(FRAUD-ON-THE-MARKET DOCTRINE)**

53.     The market for Lululemon's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Lululemon's securities traded at artificially inflated prices during the Class Period.  On

14

December 29, 2023, the Company's share price closed at a Class Period high of $511.29 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Lululemon's securities and market information relating to Lululemon, and have been damaged thereby.

54.     During the Class Period, the artificial inflation of Lululemon's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Lululemon's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Lululemon and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

55.     At all relevant times, the market for Lululemon's securities was an efficient market for the following reasons, among others:

(a)     Lululemon shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Lululemon filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Lululemon regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on

the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Lululemon was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

56.    As a result of the foregoing, the market for Lululemon's securities promptly digested current information regarding Lululemon from all publicly available sources and reflected such information in Lululemon's share price. Under these circumstances, all purchasers of Lululemon's securities during the Class Period suffered similar injury through their purchase of Lululemon's securities at artificially inflated prices and a presumption of reliance applies.

57.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## **NO SAFE HARBOR**

58.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Lululemon who knew that the statement was false when made.

<u>**FIRST CLAIM**</u>

**Violation of Section 10(b) of The Exchange Act and**

**Rule 10b-5 Promulgated Thereunder**

<u>**Against All Defendants**</u>

59.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

60.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Lululemon's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

61.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Lululemon's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

62.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Lululemon's financial well-being and prospects, as specified herein.

63.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Lululemon's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Lululemon and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

64.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management

team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

65.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Lululemon's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

66.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Lululemon's securities was artificially inflated during the Class Period.  In ignorance of the fact

that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Lululemon's securities during the Class Period at artificially high prices and were damaged thereby.

67.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Lululemon was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Lululemon securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

68.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

69.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

**Violation of Section 20(a) of The Exchange Act**

**Against the Individual Defendants**

70.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

71.    Individual Defendants acted as controlling persons of Lululemon within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

72.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

73.    As set forth above, Lululemon and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 8, 2024

*/s/ Gregory B. Linkh*

**GLANCY PRONGAY & MURRAY LLP**
Gregory B. Linkh (GL-0477)
Rebecca Dawson
230 Park Ave, Suite 358
New York, New York 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com
       rdawson@glancylaw.com

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Telephone: (310) 914-5007

*Counsel for Plaintiff Prathik Patel*

**SWORN CERTIFICATION OF PLAINTIFF**

**LULULEMON ATHLETICA INC. SECURITIES LITIGATION**

I, Dr. Prathik Patel, certify that:

1. I have reviewed the Complaint, adopt its allegations, and authorize the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the Lululemon Athletica Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Lululemon Athletica Inc. securities during the Class Period set forth in the Complaint are as follows:

   (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

8/2/2024                              *Prathik Patel*
_____                    _____
Date                                          Dr. Prathik Patel

**Dr. Prathik Patel's Transactions in Lululemon Athletica Inc. Options**

| Date | Transaction Type | Contract Type | Exp / Strike | Quantity | Price |
|------|------------------|---------------|--------------|----------|-------|
| 7/19/2024 | Bought to Open | Call | 10/18/2024 / $290 | 10 | $19.9300 |
| 7/19/2024 | Bought to Open | Call | 10/18/2024 / $290 | 10 | $20.9900 |