MEMO ENDORSED

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED:  __April 3, 2025__

March 27, 2025

**Via ECF & Email**

Hon. Andrew L. Carter, Jr.
United States District Judge
Southern District of New York
40 Foley Square, Rm 444, New York, NY 10007
ALCarterNYSDChambers@nysd.uscourts.gov

**Re:**    *Patel v. lululemon athletica inc., et al.*, **1:24-cv-06033 (ALC) (S.D.N.Y.)**

Dear Judge Carter:

Plaintiffs respectfully submit this letter in response to Defendants lululemon athletica inc. ("lululemon" or "Company"), CEO Calvin McDonald ("McDonald"), and CFO Meghan Frank's ("Frank," and, collectively, "Defendants") pre-motion letter (ECF No. 47, "PML") setting forth bases for a contemplated motion to dismiss Plaintiffs' Amended Complaint (ECF No. 46, "AC").

As set forth below, the AC sufficiently alleges that, from December 8, 2023 to July 24, 2024, inclusive ("Class Period"), Defendants violated the Securities Exchange Act by making repeated false and misleading statements and omissions regarding (i) lululemon's inventory allocation from December 2023 through March 2024, and (ii) the benefits of a "Breezethrough legging" to the Company's bottom line from March to June 2024. *See* ¶¶5-13.[1] Accordingly, at this time, Plaintiffs do not intend to amend the AC pursuant to Rule 2.D.i of Your Honor's Individual Practices.

***Background:*** lululemon designs, distributes, and sells "athleisure" apparel, *i.e.*, casual clothing to be worn both for exercise and general use. *See* ¶¶35-36. In 2022—over a year before the Class Period begins in December 2023—the Company intentionally overstocked its inventory. ¶¶68-72. Starting in early 2023, in response to analyst concerns, Defendants emphasized that lululemon would reduce inventory to match expected demand by December 2023. ¶¶73-80. As this effort progressed, in fall 2023, Defendants touted customer response to a lululemon back-to-school campaign marketing smaller sizes and colored apparel to younger women in the U.S. ¶¶128-34.

***Defendants Made False and Misleading Statements With Scienter***: Defendants' priming of investor expectations culminated on December 7, 2023, when, after markets closed, they reported the Company's third quarter 2023 results. ¶157. On a call with investors, Defendants stated, among other things, that lululemon had sufficient inventory to meet demand, including that "[w]e remain comfortable with both the quality and quantity of our inventory," "we feel pleased with the level and currency of the inventory," and "[w]e have not seen a dramatic shift as it relates to our product and our assortment," which communicated to investors that the Company's then-current inventory assortment could support expected demand. ¶¶216-25. These assurances were pivotal, as analysts and investors knew that U.S. women's products were lululemon's most important and lucrative market. ¶¶40-54. The Company's share price quickly skyrocketed to an all-time high of $511.29 on December 29, 2023 (¶278), and Defendants' assurances continued into 2024 (¶¶226-31).

---

[1] "¶___" refers to paragraphs in the AC.

1

Defendants' statements, however, were materially false and misleading. Unbeknownst to investors, demand for smaller sizes and colors—the centerpiece of the marketing campaign—had exploded, and lululemon's Chief Product Officer, Michelle Choe ("Choe"), had failed to purchase sufficient sizes 0 to 4 and colors to meet demand. ¶¶5-6, 143-47. Defendants made these assurances with knowing or reckless disregard for the truth, *i.e.*, with scienter. For example, Defendants boasted of their "perfect inventory visibility" into lululemon's inventory allocation in real-time through the Company's "Nedap" cloud-based inventory system, which was specifically designed to alert Defendants to shortages of specific sizes or colors. ¶¶81-114, 167-68. In addition, Defendants intentionally promoted smaller sizes and colors in their back-to-school campaign, and thus knew of surging demand. ¶¶115-34. Finally, Defendants admitted that Choe, who reported directly to McDonald, had failed to purchase sufficient smaller sizes and colors of U.S. women's products ***in August 2023***. ¶¶135-54. Further, this strong inference of scienter is further bolstered by Defendants' (and other insiders') sales of thousands of shares for millions in profits directly after their misleading assurances to investors in December 2023. ¶¶240-61.

On the next earnings call, in March 2024, Defendants admitted that lululemon's U.S. business had materially slowed and would continue to moderate because of insufficient inventory of 0 to 4 sizes and colors of U.S. women's products, and lululemon's share price plummeted 15.8%. ¶¶166-70.

As they disclosed the Company's insufficient inventory, Defendants tried to soften the blow by highlighting a new "Breezethrough legging" product that they claimed would "play[] a positive through the back half of this year" (¶¶232-38),duping analysts into believing that the legging would contribute nearly 9% of near-future earnings (¶¶184-94). Defendants misleadingly omitted, however, the legging's multiple obvious design flaws, which were so prominent Defendants pulled the product just two weeks after launch. ¶¶197-204. The Company's share price fell 9.1%. *Id.* As with their inventory misstatements, Defendants knew all along that they were misleading investors because, as they later admitted, the Breezethrough legging was merely a "test and learn," *i.e.*, had never been intended at any time to bolster to the Company's 2024 performance. ¶210.

Tellingly, the PML does not address these particularized factual allegations. Instead, the PML baldly asserts that the AC does not allege falsity, scienter, or loss causation. Defendants are wrong.

***Defendants' Misstatements are Actionable:*** The PML asserts that Defendants' statements about inventory and Breezethrough legging are not actionable because they are forward-looking and protected by the PSLRA's "safe harbor," opinions, and fraud-by-hindsight. PML at 2-3. Not so. *First*, the safe harbor does not apply to Defendants' statements, which were misleading because they *omitted* material facts. *See* ¶¶216-38; *City of Providence v. Aeropostale, Inc.*, 2013 WL 1197755, at *13 (S.D.N.Y. Mar. 25, 2013) ("safe harbor does not apply to material omissions").[2] Nor are the portions of Defendants' statements that describe present facts—*e.g.*, "[w]e *remain* comfortable" (¶216); "[w]e *have not* seen" (¶222); "we *see* playing a positive" (¶232)—subject to the safe harbor. *See id.* Accordingly, this case is nothing like *Robeco Cap. Growth Funds SICAV v. Peloton Interactive, Inc.*, 2024 WL 4362747, at *11-*12 (S.D.N.Y. Sept. 30, 2024) (Carter, J.), where inventory statements concerning the COVID-19 period were dismissed because, unlike here, they were generic, wholly forward-looking, and had no negative financial impact. *Id.* Further, while cautionary language must be meaningful for the safe harbor to apply, Defendants' warnings

---

[2] All internal quotations and citations are omitted, and emphasis added unless otherwise indicated.

were boilerplate, and, at most, concerned risks that had already occurred. *See* ¶¶224, 230, 234, 238; *In re ITT Educ. Servs.*, 34 F. Supp. 3d 298, 306 (S.D.N.Y. 2014) (cautionary language "is not 'meaningful' if it fails to address risks known to the defendants at the time the statement was made"). Finally, Defendants had actual knowledge of falsity. *See* ¶¶102-10, 128-34, 167-68, 210.

*Second*, while Defendants assert that *every* alleged misstatement (other than risk factors) is an opinion (*see* PML at 2), statements like "market share gains continued," "[we're] not seeing a behavioral shift within our assortment mix," and "sales trend remains balanced" are of present fact. ¶¶220, 222, 226. Regardless, even if certain statements are opinions, they are actionable because they "did not align with the information in [Defendants'] possession." *See In re Shanda Games Ltd. Sec. Litig.*, 128 F.4th 26, 48 (2d Cir. 2025). Indeed, opinions that inventory was "in good shape" and "under control" are actionable because Defendants knew the opposite was true. *Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000); *see also Emps.' Ret. Sys. v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015) (statements about "appropriate inventory levels" actionable).

*Third*, Plaintiffs do not allege fraud-by-hindsight because Defendants knew or recklessly disregarded insufficient inventory and admitted the legging was merely "test and learn." *See, e.g.*, *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 494-95 (S.D.N.Y. 2004).

***The AC Alleges Defendants' Scienter***: Plaintiffs allege Defendants' scienter for these and other misstatements by alleging both their knowledge of facts or "access to information" contradicting their statements, and "motive and opportunity" for fraud. *See Blanford*, 794 F.3d at 306. For example, lululemon's Nedap system gave Defendants knowledge of facts or access to information contradicting their inventory statements, and Defendants consistently touted their real-time knowledge and tracking of sales and demand. *See In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, 2014 WL 285103, at *4 (S.D.N.Y. Jan. 27, 2014) ("'real time' electronic inventory monitoring" supports scienter). In addition, the AC alleges motive based on trades that are "unusual or suspicious" under the seven-factor test cited by this Court in *Sun v. TAL Education Group*, 2023 WL 6394413, at *29 (S.D.N.Y. Sept. 29, 2023) (Carter, J.). For example, days after their December 2023 misrepresentations, as its share price neared an all-time high of $511.29, insiders, including Defendants, sold lululemon shares for over $16 million in profits. ¶¶242. The sales represented 14.9% to 60.9% of each seller's holdings, were inconsistent with prior trading, involved senior Company executives, and were not pursuant to Rule 10b5-1 plans. ¶¶249-52. These allegations easily refute any assertion that the AC fails to allege scienter. *See* PML at 3.

***Defendants' Misstatements Caused Plaintiffs Losses***: Contrary to the PML, the AC alleges corrective disclosures revealing the falsity of Defendants' statements and that "the subject of [those] misrepresentations and omissions caused their loss." *See In re: EZCorp, Inc. Sec. Litigations*, 181 F. Supp. 3d 197, 211 (S.D.N.Y. 2016) (Carter, J.). Defendants disclosed on March 21, 2024 that lululemon lacked sufficient inventory of U.S. women's products. ¶¶166-67, 279. This revealed the falsity of assurances about inventory, and lululemon's share price declined 15.8%. ¶280. The truth continued to emerge on May 21, 2024, when Defendants announced Choe's departure, revealing the extent of inventory problems, and shares declined 7.2%. ¶¶288-93. The truth fully emerged when Defendants pulled the Breezethrough legging on July 24, 2024, revealing that the legging could not ameliorate poor performance, and shares plummeted 9.1%. ¶¶294-96.

Plaintiffs are available to respond to the Court's questions or to otherwise further address the PML.

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Brian Calandra*

Brian Calandra
Jeremy Lieberman
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: 212/661-1100
212/661-8665 (fax)
bcalandra@pomlaw.com
jalieberman@pomlaw.com

**ROBBINS GELLER RUDMAN
& DOWD LLP**

Samuel H. Rudman
Michael G. Capeci
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mcapeci@rgrdlaw.com

*Co-Lead Counsel for Lead Plaintiffs*

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**

Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: 212/697-6484
212/697-7296 (fax)
peretz@bgandg.com

*Additional Counsel for Lead Plaintiff the John
Fogel Revocable Trust*

**VANOVERBEKE MICHAUD & TIMMONY,
P.C.**

Thomas C. Michaud
79 Alfred Street
Detroit, MI 48201
Telephone: 313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

4

*Additional Counsel for Lead Plaintiffs Macomb County Employees' Retirement System, Macomb County Retiree Health Care Fund, and Macomb County Intermediate Retirees Medical Benefits Trust*

cc: All counsel of record

SO ORDERED:

HON. ANDREW L. CARTER, JR.
UNITED STATES DISTRICT JUDGE

April 3, 2025
New York, NY

The Court DENIES Defendants' request for a premotion conference and GRANTS Defendants leave to file a motion to dismiss Lead Plaintiffs' Amended Complaint.

The Parties shall adhere to the briefing schedule stipulated and agreed to by the Parties as reflected in the Court's February 12, 2025 order.  ECF No. 45.