**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PRATHIK PATEL, Individually and on Behalf of All Others Similarly Situated,

        Plaintiff,

   v.

LULULEMON ATHLETICA INC., CALVIN MCDONALD, and MEGHAN FRANK,

        Defendants.

Civil Action No. 1:24-cv-06033-ALC

Hon. Andrew L. Carter, Jr.

CLASS ACTION

ORAL ARGUMENT REQUESTED

 

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

*Counsel for Defendants lululemon athletica inc., Calvin McDonald, and Meghan Frank*

May 19, 2025

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ......................................................................................................3

     A.     The Inventory Statements ..................................................................................4

     B.     The Breezethrough Statements ...........................................................................5

ARGUMENT ........................................................................................................................6

I.     Plaintiffs Fail To State A Section 10(b) Claim ..................................................................6

     A.     Plaintiffs Do Not Plead A Material Misstatement Or Omission..............................7

            1.     Plaintiffs' Allegations Do Not Satisfy The PSLRA's Heightened
                  Pleading Standards For Forward-Looking Statements. ..............................7

                  a.     The Forward-Looking Statements Were Accompanied By
                       Specific, Meaningful Cautionary Language. ..................................9

                  b.     Plaintiffs Fail To Plead Actual Knowledge That The
                       Forward-Looking Statements Were False. ..................................10

            2.     Plaintiffs Do Not Adequately Plead That The Statements Of
                  Opinion Were False Or Misleading. ........................................................14

            3.     Plaintiffs Plead No Particularized Facts To Demonstrate
                  Contemporaneous Falsity................................................................17

     B.     Plaintiffs Do Not Plead A Strong Inference Of Scienter. .....................................20

            1.     Plaintiffs' Motive And Opportunity Allegations Are Insufficient............21

            2.     Plaintiffs' Circumstantial Allegations Of Recklessness Are
                    Insufficient. .................................................................................23

     C.     Plaintiffs Do Not Plead Loss Causation................................................................25

II.     Plaintiffs Fail To State A Section 20(a) Claim .................................................................25

CONCLUSION.....................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
    28 F.4th 343 (2d Cir. 2022) ............................................................................21, 25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................6

*ATSI Commc'ns, Inc. v Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007).....................................................................................6

*In re Barrick Gold Corp. Sec. Litig.*,
    341 F. Supp. 3d 358 (S.D.N.Y. 2018).....................................................................24

*Bell Atl. Corp v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................6

*In re Bemis Co. Sec. Litig.*,
    512 F. Supp. 3d 518 (S.D.N.Y. 2021).....................................................................14

*In re Bristol–Myers Squibb Sec. Litig.*,
    312 F. Supp. 2d 549 (S.D.N.Y. 2004).....................................................................22

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
    450 F. Supp. 3d 379 (S.D.N.Y. 2020).....................................................................23

*City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*,
    2024 WL 4349289 (S.D.N.Y. Sept. 30, 2024).........................................................17

*In re Coty Inc. Sec. Litig.*,
    2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016) ..........................................................16

*In re eSpeed, Inc. Sec. Litig.*,
    457 F. Supp. 2d 266 (S.D.N.Y. 2006)................................................................22, 23

*Francisco v. Abengoa, S.A.*,
    481 F. Supp. 3d 179 (S.D.N.Y. 2020).....................................................................24

*Frankfurt-Trust Inv. Luxemburg AG v. United Techs. Corp.*,
    336 F. Supp. 3d 196 (S.D.N.Y. 2018).....................................................................15

*Gluck v. Hecla Mining Co.*,
    2024 WL 4362730 (S.D.N.Y. Sept. 30, 2024).........................................................8

*Golesorkhi v. Green Mountain Coffee Roasters, Inc.*,
   973 F. Supp. 2d 541 (D. Vt. 2013) ........................................................................................20

*Gray v. Wesco Aircraft Holdings, Inc.*,
   454 F. Supp. 3d 366 (S.D.N.Y. 2020) ................................................................................7, 10

*Holbrook v. Trivago N.V.*,
   2019 WL 948809 (S.D.N.Y. Feb. 26, 2019) ........................................................................24

*In re Iconix Brand Grp., Inc.*,
   2017 WL 4898228 (S.D.N.Y. Oct. 25, 2017) ......................................................................22

*Inter-Loc. Pension Fund GCC/IBT v. Gen. Elec. Co.*,
   445 F. App'x 368 (2d Cir. 2011) ..........................................................................................13

*Lefkowitz v. Synacor, Inc.*,
   2019 WL 4053956 (S.D.N.Y. Aug. 28, 2019) ....................................................................15

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005) ................................................................................................25

*Marcu v. Cheetah Mobile Inc.*,
   2020 WL 4016645 (S.D.N.Y. 2020) ....................................................................................20

*Maso Cap. Invs. Ltd. v. E-House (China) Holdings Ltd.*,
   2024 WL 2890968 (2d Cir. June 10, 2024) .......................................................................6, 7

*In re Molycorp, Inc. Sec. Litig.*,
   2015 WL 1097355 (S.D.N.Y. Mar. 12, 2015) .....................................................................14

*Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
   300 F. Supp. 3d 551 (S.D.N.Y. 2018) .................................................................................15

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015) .................................................................................................14, 15, 16

*In re Plug Power, Inc. Sec. Litig.*,
   2022 WL 4631892 (S.D.N.Y. Sept. 29, 2022) ....................................................................22

*In re Renewable Energy Grp. Sec. Litig*,
   2022 WL 14206678 (2d Cir. Oct. 25, 2022) ..................................................................12, 24

*Robeco Cap. Growth Funds SICAV – Robeco Glob. Consumer Trends v. Peloton
Interactive, Inc.*,
   2024 WL 4362747 (S.D.N.Y. Sept. 30, 2024) ............................................................ *passim*

*In re Rockwell Med., Inc. Sec. Litig.*,
   2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) .....................................................................24

*In re Sanofi Sec. Litig.*,
  87 F. Supp. 3d 510 (S.D.N.Y. 2015).................................................................8, 15, 21

*Schiro v. Cemex, S.A.B. de C.V.*,
  396 F. Supp. 3d 283 (S.D.N.Y. 2019)....................................................................23

*In re Shanda Games Ltd. Sec. Litig.*,
  2019 WL 11027710 (S.D.N.Y. Sept. 30, 2019).................................................7, 18

*Shemian v. Research In Motion Ltd.*,
  2013 WL 1285779 (S.D.N.Y. Mar. 29, 2013) ......................................8, 10, 19, 20

*In re Skechers USA, Inc. Sec. Litig.*,
  444 F. Supp. 3d 498 (S.D.N.Y. 2020).....................................................................23

*Slayton v. Am. Exp. Co.*,
  604 F.3d 758 (2d Cir. 2010)....................................................................................10

*Steinberg v. Ericsson LM Tel. Co.*,
  2008 WL 5170640 (S.D.N.Y. Dec. 10, 2008) ........................................................23

*SUN, A Series of E Squared Inv. Fund, LLC v. Sundial Growers Inc.*,
  2021 WL 4482276 (S.D.N.Y. Sept. 30, 2021)........................................................17

*In re Synchrony Fin. Sec. Litig.*,
  988 F.3d 157 (2d Cir. 2021)...............................................................................16, 17

*In re Take-Two Interactive Sec. Litig.*,
  551 F. Supp. 2d 247 (S.D.N.Y. 2008).....................................................................22

*Tellabs Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).................................................................................................20

*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016)....................................................................................14

*In re Travelzoo Inc. Sec. Litig.*,
  2013 WL 1287342 (S.D.N.Y. Mar. 29, 2013) ........................................................23

*In re Veon Ltd. Sec. Litig.*,
  2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018) .........................................................24

*Villare v. Abiomed, Inc.*,
  2021 WL 4311749 (S.D.N.Y. Sept. 21, 2021).........................................................21

*Woolgar v. Kingstone Cos.*,
  477 F. Supp. 3d 193 (S.D.N.Y. 2020)...............................................................22, 24

*In re Yatsen Holding Ltd. Secs. Litig.*,
  2024 WL 3498049 (S.D.N.Y. July 22, 2024) .........................................................................16

**Statutes**

15 U.S.C. § 78u-4(b)(2) .........................................................................................................20

15 U.S.C. § 78u-4(b)(3) ...........................................................................................................1

15 U.S.C. § 78u-5(i)(1) ............................................................................................................7

15 U.S.C. § 78u-5(c)(1)(B) .....................................................................................................10

**Rules**

Fed. R. Civ. Proc. 8 .................................................................................................................1

Fed. R. Civ. Proc. 9(b) .........................................................................................................1, 6

Fed. R. Civ. Proc. 12(b)(6) ...................................................................................................1, 6

Defendants lululemon athletica inc. ("lululemon" or the "Company"), Calvin McDonald, and Meghan Frank (together, the "Individual Defendants" and, collectively with lululemon, "Defendants"), respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint, ECF No. 46 (the "Complaint" or "AC"), pursuant to Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(3) (the "PSLRA").

## PRELIMINARY STATEMENT

lululemon is a designer and retailer of technical athletic apparel, footwear, and accessories that operates in over 25 countries. Despite unprecedented growth and year-over-year success, Plaintiffs have filed this lawsuit because lululemon allegedly misled investors by failing to *perfectly* predict consumer preferences in an aspect of its product offerings, in one region, for a narrow window of time. Unrelatedly, Plaintiffs also challenge Defendants' excitement about a new product launch, asserting that Defendants must have known about an "obvious design flaw" because customers ultimately reacted negatively to the design. Unable to identify a single confidential witness or other internal source reflecting any information that contradicted the Company's public disclosures, the Complaint offers only vague, speculative inferences about what Defendants "must have known" that fall far short of the heightened pleading standards under the PSLRA and Rule 9(b). Nonetheless, Plaintiffs say lululemon's common stock was "artificially inflated" from December 8, 2023 to July 24, 2024 (the "Class Period"). AC ¶ 34.

This kind of fraud-by-hindsight has long been rejected by courts in this District. A company's misjudgment about the precise inventory allocation needed several months down the line or the launch of a new product that ultimately does not meet customers' expectations are not indicia of fraud; they are the realities of doing business in a complex environment. At all times, lululemon kept investors apprised of its current inventory levels and the risks with over- or

underestimating inventory needs for the future.  And lululemon never promised success for its new Breezethrough leggings (or any other product)—it merely expressed excitement for that new offering.  This is not the stuff of securities fraud; it is a litigation effort to seize upon a stock price decline based on reverse-engineered allegations.  The Complaint should be dismissed, in its entirety, on any one of the following grounds.

*First*, Plaintiffs do not plead any actionable misstatement or omission.  ***All*** of the alleged misstatements are either (i) forward-looking statements (accompanied by robust risk disclosures) that are protected by the PSLRA's safe harbor or (ii) non-actionable personal opinion statements. Plaintiffs must plead that Defendants had actual contemporaneous knowledge that their forward-looking statements were false, or that they did not genuinely and reasonably believe their stated opinions.  This is no small task, and without confidential witnesses or any other allegations as to any internal company documents or knowledge, Plaintiffs come nowhere close.

Plaintiffs plead no particularized allegations demonstrating that any person at the Company (let alone the Individual Defendants) contemporaneously *knew* that lululemon lacked certain sizes and color to meet future demand, nor that customers would dislike the design of the Breezethrough leggings.  Further, even if any of the challenged statements could be construed as an objective assertion of present fact, Plaintiffs fail to plead falsity because there are no particularized allegations establishing *what* inventory shortfall or design issues arose, *when* they first did so, *who* knew about them, and *how* any challenged statement was false as a result.  *See* Section I.A.

*Second*, Plaintiffs' claims are independently subject to dismissal because they have not pled with particularity facts giving rise to a strong inference of scienter.  The theory of fraud here— that the Company *knowingly* mismanaged and misstated its inventory projections and released a product it *knew* customers would not react positively to—for no discernible benefit to the

Company or the Individual Defendants—is wholly implausible, never mind compelling.  The far more compelling (and intuitive) explanation is that the Company simply did not project with 100% accuracy consumer preferences and product demand over a short period of time, and swiftly worked to accelerate inventory once it identified the missed opportunity, consistent with its disclosures.  Further, Plaintiffs' scienter allegations based on executives' stock sales *eleven days* into the seventh-month Class Period should be rejected as insufficient under well-settled law.  *See* Section I.B.

*Third*, Plaintiffs fail to plead loss causation. All that Plaintiffs' purported corrective disclosures "reveal" is that this action is a thinly-veiled attempt by Plaintiffs to ride a stock drop based on unrelated Company announcements.  *See* Section I.C.

*Finally*, Plaintiffs' Section 20(a) control-person claim should be dismissed for failure to plead a primary violation or culpable participation.  *See* Section II.

## STATEMENT OF FACTS

lululemon is a global company that designs, distributes, and retails technical athletic apparel, footwear, and accessories.  *See* AC ¶¶ 3, 36.  As with any retail business, the Company strives to manage inventory so that it has enough (but not too much) product to meet demand.  *Id.* ¶ 3.  The Complaint challenges two categories of statements from lululemon's public disclosures: (i) statements made between December 7, 2023 and March 21, 2024 concerning lululemon's macro-level inventory (the "Inventory Statements"), *see* AC ¶¶ 216, 218, 220, 222, 224, 226, 228, 230, and (ii) statements made between March 21 and June 5, 2024 concerning the Breezethrough leggings product launch (the "Breezethrough Statements"), *see id.* ¶¶ 232, 234, 236, 238.[1]

---

[1] *See* Ex. B at 41–42; Ex. C at 6, 8, 15, 17; Ex. D at 1; Ex. E at 12; Ex. F at 18; Ex. G at 32; Ex. H at 11.  "Ex. _" refers to the exhibits attached to the accompanying Declaration of Caroline H. Zalka.  On this motion, the Court may consider facts from the Complaint, documents incorporated therein, documents filed with the SEC, and documents relied on by Plaintiffs in bringing suit.  *See*

### A.    The Inventory Statements

In the summer of 2023, lululemon launched a seasonal back-to-school marketing campaign, *see* AC ¶¶ 115–16.[2]  On December 7, 2023 Defendants informed investors that the Company had observed a positive response to its "back-to-school product innovations."  Ex. C at 6.  More broadly, the Company stated in early 2024 that "guests continue to respond well to our innovative and versatile product offerings."  Ex. D at 1.

More generally, Defendants also made various statements regarding the Company's product inventory.  On December 7, 2023, Ms. Frank (the Company's Chief Financial Officer) stated "we remain comfortable" and "feel pleased" with the Company's inventory of product.  AC ¶¶ 216, 218.  At the same time, Ms. Frank disclosed that the Company's inventory in Q3 2023 was "down 4% versus last year and lower than our guidance."  Ex. C at 8; *see also id.* at 15.  The Company cautioned that if it did not "accurately forecast guest demand," that could result in either "excess inventory levels" or "a shortage of products available for sale in our stores or for delivery to guests."  *E.g.*, Ex. B at 42; Ex. E at 12.

On March 21, 2024, lululemon disclosed its Q4 2023 earnings, which met the Company's overall revenue targets.  Ex. F at 3–4.  In the earnings call on the same day, Mr. McDonald confirmed that through its various marketing efforts, the Company had "attracted more younger guests into the brand" and had "seen strong sell-through of our smaller sizes and our offering of

---

*Robeco Cap. Growth Funds SICAV – Robeco Glob. Consumer Trends v. Peloton Interactive, Inc*., 2024 WL 4362747, at *8 (S.D.N.Y. Sept. 30, 2024).  For the Court's convenience, please reference Exhibit A for the relevant disclosures excerpted with accompanying context.

[2] As the news articles incorporated into the Complaint explain, the campaign was aimed at both men and women, as well as students and non-students.  *See* Ex. I at 2 (cited at AC ¶ 125) ("Whether you're actually shopping to prepare for class in the fall or just need some transitional staples, lululemon's back-to-school collection has got you covered."); Ex. J (cited at AC ¶ 124).

color." AC ¶¶ 167, 169–70.  Mr. McDonald updated investors that that the Company was "chasing into these areas of the assortment so we can better maximize the business."  *Id.* ¶ 167 (quoting Ex. F at 4).  Ms. Frank echoed that there were "a few pockets in the U.S. where we feel like we've got an opportunity to accelerate what's working in terms of inventory," including smaller sizes and additional color offerings for U.S. women's products.  *Id.* ¶ 169 (quoting Ex. F at 12–13).  Mr. McDonald added, though, that he expected the Company's inventory for these color and size offerings "will continue to improve starting in Q2 through [Q4]," noting that customers were "respond[ing] incredibly well" to new color offerings already being rolled out.  *Id.* ¶ 228 (quoting Ex. F at 18).  Notwithstanding the positive overall earnings report, lululemon's stock price declined following the release of its earnings information.  *Id.* ¶ 170.

On May 21, 2024, the Company announced that its Chief Product Officer, Michelle (Sun) Choe, was departing the Company and that lululemon "was making strategic organizational changes" to design and merchandising.  *Id.* ¶ 180.  The Company's stock price declined following the release of that news.  *Id.* ¶ 181.

### B.    The Breezethrough Statements

During the March 21, 2024 earnings call, lululemon announced the launch of a new product, the Breezethrough leggings.  *See id.* ¶ 186.  On that call, Mr. McDonald stated there was "some exciting new innovation coming in our leggings. . . includ[ing] a new innovation design," adding that "[w]e have a . . . legging coming out in summer"—the Breezethrough legging— "that we see playing a positive through the back half of this year."  *Id.* ¶¶ 232, 236 (quoting Ex. F at 10, 18).  The Company's risk disclosures cautioned that if the Company is "unable to . . . successfully develop and introduce new, innovative, and differentiated products" it may "not be able to maintain or increase [its] sales and profitability."  *Id.* ¶¶ 234, 238.  Several months later, on July 24, 2024, lululemon announced its decision to pause the Breezethrough leggings after customers

responded negatively to certain aesthetic design features. *Id.* ¶ 294. Following this news, lululemon's stock price declined. *See id.* ¶ 295. This litigation followed.

## ARGUMENT

Under Rule 12(b)(6), Plaintiffs must "state a claim to relief that is plausible on its face," *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007), which requires "more than a sheer possibility that a defendant has acted unlawfully," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint alleging securities fraud must satisfy the "heightened pleading requirements" of Rule 9(b), and the PSLRA further requires that Plaintiffs plead their claims "with particularity." *ATSI Commc'ns, Inc. v Shaar Fund, Ltd*., 493 F.3d 87, 99 (2d Cir. 2007).

Plaintiffs offer two theories of liability. First, Plaintiffs argue that Defendants' assessments of the Company's inventory were false or misleading because the Company *knew* what future consumer preferences and demand would be, and *knew* that it lacked adequate inventory to meet it. *See* AC ¶¶ 216–17. Second, Plaintiffs argue that Defendants' optimism regarding the Breezethrough leggings was false or misleading because lululemon ultimately paused the leggings after customers reacted to supposed "obvious design flaws" and because lululemon stated that the leggings were intended as a "test and learn" product. *Id.* ¶ 237. Neither theory states a viable claim for securities fraud.

## I.    PLAINTIFFS FAIL TO STATE A SECTION 10(b) CLAIM

To state a Section 10(b) claim, Plaintiffs must allege "(1) a material misrepresentation or omission . . . ; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Maso Cap. Invs. Ltd. v. E-House (China) Holdings Ltd.*, 2024 WL 2890968, at *2 (2d Cir. June 10, 2024). Here, Plaintiffs fail to plead (A) a misrepresentation or omission, (B) scienter, or (C) loss causation, each of which is an independent ground for dismissal.

**A.    Plaintiffs Do Not Plead A Material Misstatement Or Omission.**

As set forth below, Plaintiffs' theories are based entirely on "fraud-by-hindsight," which "[a]s this District has consistently held, [] cannot support a 10(b) claim." *In re Shanda Games Ltd. Sec. Litig.*, 2019 WL 11027710, at *5 (S.D.N.Y. Sept. 30, 2019).

**1.    Plaintiffs' Allegations Do Not Satisfy The PSLRA's Heightened Pleading Standards For Forward-Looking Statements.**

The PSLRA prohibits reliance on forward-looking statements as a basis for liability when the statement is *either* "accompanied by meaningful cautionary language" *or* "the plaintiff fails to prove that [it] was made with actual knowledge that it was false or misleading." *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 385 (S.D.N.Y. 2020). Here, both prongs apply.

Almost by definition,[3] nearly all of the Inventory Statements are forward-looking.[4] Those statements include assertions that lululemon "expect[s]" that inventory "will continue to improve starting in Q2 through [Q4]," AC ¶ 228, and that the Company's "sales trend remains balanced . . . , enabling us to raise our guidance." *Id.* ¶ 226.[5] A statement about the adequacy or quality of inventory—even to the extent the statement speaks in the present tense—necessarily depends on a *projection* about future sales and demand. Thus, a statement that "[o]ur inventories are healthy

---

[3] A forward-looking statement is "a statement of the plans and objectives of management for future operations" or "a statement of future economic performance." 15 U.S.C. § 78u-5(i)(1).

[4] Only two Inventory Statements are not forward-looking: (i) "[G]uests responded well to our back-to-school product innovations," AC ¶ 220, and (ii) "[W]e have not seen a dramatic shift as it relates to our product and our assortment." *Id.* ¶ 222. For the reasons set forth below, Plaintiffs have failed to plead any facts demonstrating that either statement was false when made. *See infra* Sections 1.A.2–3.

[5] *See also* AC ¶ 216 ("[W]e remain comfortable with both the quality and quantity of our inventory"); *id.* ¶ 218 ("[W]e feel pleased with the level and currency of the inventory . . . at the end of Q3 and . . . the end of Q4"); *id.* ¶ 224 ("If we fail to accurately forecast guest demand, we may experience excess inventory levels or a shortage of products available for sale in our stores or for delivery to guests."); *id.* ¶ 230 (same).

and our logistics teams are well-equipped," is a "paradigmatic forward-looking statement," *Peloton*, 2024 WL 4362747, at *9, and a statement that "[c]urrent reserves and resources provide mining inventory out to 2023" likewise falls "squarely within the definition of . . . a statement of future economic performance." *Gluck v. Hecla Mining Co*., 2024 WL 4362730, at *7 (S.D.N.Y. Sept. 30, 2024). Notably, Plaintiffs do not challenge the accuracy of a single factual statement about current inventory levels, including, for example, Ms. Frank's December 7, 2023 disclosure that "we ended the quarter down 4% in inventory." Ex. C at 15; *see also* Ex. F at 8 (disclosing 9% inventory decline). Instead, they take issue with Defendants' answers about what inventory was necessary to meet future demand. *See* AC ¶¶ 216, 218, 222, 228.

*All* of the Breezethrough Statements are forward-looking, including: "[w]e have a . . . legging coming out . . . that we see playing a positive through the back half of this year," and "we have some exciting new launches . . . includ[ing] a new innovation design." *Id.* ¶¶ 232, 236.[6] Statements concerning a product's "debut into the global market," *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 538 (S.D.N.Y. 2015), or "planned product launches" are "forward-looking." *Shemian v. Research In Motion Ltd.*, 2013 WL 1285779, at *24 (S.D.N.Y. Mar. 29, 2013).[7]

---

[6] *See also id.* ¶ 236 ("We have some exciting new innovation coming in our leggings"); *id.* ¶ 238 ("If we are unable to anticipate consumer preferences and successfully develop and introduce new, innovative, and differentiated products, we may not be able to maintain or increase our sales and profitability."); *id.* ¶ 234 ("If we are unable to . . . successfully develop and introduce new, innovative . . . products, we may not be able to maintain or increase our sales and profitability").

[7] Plaintiffs also allege that certain risk disclosures are misleading because the "present risk[] . . . in fact, had materialized." *See, e.g.*, AC ¶ 225. But such allegations cannot strip the PSLRA's safe harbor protections from forward-looking statements. *See, e.g.*, *Peloton*, 2024 WL 4362747, at *9 (characterizing a risk disclosure concerning inventory as "forward-looking and cautionary"). In any event, Plaintiffs fail to allege that the alleged risk had, in fact, materialized at the time of the alleged misstatement. *See infra* Section I.A.3.

a. **The Forward-Looking Statements Were Accompanied By Specific, Meaningful Cautionary Language.**

lululemon repeatedly disclosed both the potential upside benefits and downside risks associated with its inventory levels, as well as the risks associated with new product launches. The Company warned investors that, depending on its ability to "accurately forecast guest demand," it "may experience" either "excess inventory levels" or "a shortage of products available for sale in our stores or for delivery to guests," potentially resulting in an adverse impact on "gross margin" and making it difficult for manufacturers to deliver new product to meet customer demand.[8] This disclosure was included in *all* of the Company's quarterly and annual reports,[9] and incorporated by reference into the earnings calls and press releases.[10] The Company also explained the risks inherent to the development and launch of new products, as lululemon may be "unable to introduce new products or novel technologies in a timely manner," as well as the risk that its "new products

---

[8] Ex. B at 42 ("To ensure adequate inventory supply, we must forecast inventory needs . . . based on our estimates of future demand . . . . Our ability to accurately forecast demand for our products could be affected by . . . an increase or decrease in guest demand . . . . If we fail to accurately forecast guest demand, we may experience excess inventory levels or a shortage of products available for sale in our stores or for delivery to guests.").

[9] *See* Ex. E at 12; Ex. G at 33.

[10] *See* Ex. B at 20–21; Ex. C at 3 ("Actual results may differ materially from those contained in or implied by these forward looking statements due to risks and uncertainties associated with our business, including those we have disclosed in our most recent filings with the SEC, including our annual report on Form 10-K and our quarterly reports on Form 10-Q"); Ex. F at 2–3 (same); Ex. H at 2–3 (same); Ex. D at 1–2 ("Actual results and the timing of events could differ materially from those anticipated in the forward-looking statements as a result of risks and uncertainties, which include, without limitation: . . . other risks and uncertainties set out in filings made from time to time with the United States Securities and Exchange Commission, including, without limitation, its most recent reports on Form 10-K and Form 10-Q."); Ex. Q at 1 (same).

or technologies are not accepted by [customers]." Ex. E at 11.[11] These "'substantive company-specific warnings' are the precise type of 'extensive and specific' factors that courts find meaningfully cautionary," *i.e.*, lululemon "warned of the very risks alleged to have later occurred." *Peloton*, 2024 WL 4362747, at *9–10 (risk disclosure on inventory levels is "forward looking and cautionary"); *see also Shemian*, 2013 WL 1285779, at *24 (risk disclosure on the "inability . . . to enhance, develop and introduce products . . ." is cautionary); *Gray*, 454 F. Supp. 3d at 392 ("company-specific factors that . . . could cause [] results to be either 'materially better or worse'" than projected are cautionary). On this basis alone, Plaintiffs' challenge to the vast majority of the Inventory Statements and all of the Breezethrough Statements should be dismissed.

### b. <u>Plaintiffs Fail To Plead Actual Knowledge That The Forward-Looking Statements Were False.</u>

Forward-looking statements are also statutorily protected unless the statements were made "with actual knowledge" that the statement was false or misleading, or if the statement was "made by a business entity," such statements were either "made or approved by [an executive] officer with actual knowledge by that officer that the statement was false or misleading." 15 U.S.C. § 78u-5(c)(1)(B). Pleading the requisite actual knowledge "is stricter than for statements of current fact," and "*recklessness is not sufficient*." *Gray*, 454 F. Supp. 3d at 395. Plaintiffs are required to plead "proof of knowing falsity." *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 773 (2d Cir. 2010).

Here, all of the challenged forward-looking statements, save for the risk disclosures, were made by the Individual Defendants. Plaintiffs must therefore allege facts establishing that Mr. McDonald or Ms. Frank, as applicable, *knew* that their forward-looking assessments were false at

---

[11] This warning was also repeated in all quarterly and annual reports in the Class Period, and similarly incorporated into all challenged earnings calls and press releases. *See* Ex. B at 41; Ex. G at 32-33; *see also supra* n.10.

the time they made each statement.  Plaintiffs come nowhere close.  The ordinary tools typically relied on to plead actual knowledge—such as confidential witnesses, internal company documents, or post-hoc admissions of prior knowledge—are glaringly absent.  There is not one fact even suggesting that, for example, when Ms. Frank said she "remain[ed] comfortable with both the quality and quantity of our inventory," she in fact *knew* that inventory would be insufficient in smaller sizes and colors to meet consumer demand in the coming quarter.  AC ¶ 216 (quoting Ex. C at 8).  Plaintiffs' attempt to fill this hole with generalized inferences about what individuals "must have known" does nothing to save their Complaint.

First, Plaintiffs assert that the inherent nature—and ultimate success—of the back-to-school marketing campaign must mean the Company *knew* in 2023 that there would be increased demand for "smaller sized and colorful U.S. women's products."  *Id.* ¶ 127.  This is a complete non-sequitur.  Plaintiffs cite statements that, for example, customers were "responding well" to the campaign, *id.* ¶¶ 128–29, 168, but knowledge (or belief) that a marketing campaign targeting a younger demographic was successful does not mean, as Plaintiffs baldly allege, that the Company knew there would be "increased demand for smaller sizes and color in U.S. women's products." *Id.* ¶ 131.  The suggestion that a positive response to a back-to-school campaign necessarily signaled to the Company a forthcoming increase in sales of 0 to 4 sizes *ad infinitum* is unsupported by plausible facts and, moreover, presumptuous—the back-to-school campaign was marketed to customers of *all* sizes and color preferences.  *See supra* n.2.  In fact, Mr. McDonald stated in that same call that the Company had "*not* seen a dramatic shift as it relates to our product and our assortment" and were "*not* seeing a behavioral shift within our assortment mix with our guests." Ex. C at 17 (emphases added).  Plaintiffs offer no particularized factual allegations as to how any aspect of those statements were false.

Further, Plaintiffs point to, for example, Mr. McDonald's statement on the March 21, 2024 earnings call that "we have seen" sell-through of smaller sizes and unique colors, however, that statement does nothing to establish that the Company knew six months earlier that it lacked sufficient inventory to meet that future demand.  *See In re Renewable Energy Grp. Sec. Litig.*, 2022 WL 14206678, at *2 (2d Cir. Oct. 25, 2022) (refusing to find "actual knowledge" from a later-in-time press release).  Mr. McDonald was not even discussing the back-to-school campaign in that statement; he was reporting the sales trends observed by the Company since the prior earnings call and identifying opportunities to "better maximize the business."  Ex. F at 4–5.

Second, Plaintiffs claim that "by virtue of" the Nedap System—a Cloud inventory management system that allows lululemon customers to see if certain products and sizes are in stock in a specific store, *see* AC ¶¶ 81–114—the Individual Defendants had contemporaneous knowledge about where customer preferences would be and what inventory would be necessary to meet that demand.  *Id.* ¶ 171.  But the only statements about Nedap *by the Company* Plaintiffs even point to are comments made in January 2023 in which lululemon's Vice President of Global Omni Programs talked about lululemon's use of Radio-Frequency Identification ("RFID")—essentially, an advanced barcode—to provide "from a guest experience perspective, inventory visibility."  *Id.* ¶ 110.  From that statement, Plaintiffs conclude that the Company "*admit[t]ed* that by no later than January 2023, Defendants had the ability to instantly and accurately ascertain whether [l]ululemon's inventory contained sufficient sizing and color for specific U.S. women's products." *Id.* ¶ 111.  That is a breathtakingly implausible conclusion, based on blatant mischaracterization of the Company's disclosure.  RFID and other inventory management systems are ubiquitous in the industry, but that does not mean companies using that technology have the ability to "instantly and accurately ascertain" their precise inventory needs at any given moment, much less project

their precise inventory needs for several months into the future. Further, Plaintiffs theorize that lululemon has somehow solved the problem of inventory management, yet perplexingly elected *not* to use that miracle technology to purchase sufficient inventory to meet consumer demand and then *knowingly lied* about it to investors. The mere existence of data showing the inventory at each store does not justify such an incredible claim. *See Inter-Loc. Pension Fund GCC/IBT v. Gen. Elec. Co.*, 445 F. App'x 368, 370 (2d Cir. 2011) ("[V]ague and general averments that [the Individual Defendants] had access to internal corporate documents and data" are insufficient).

Third, Plaintiffs claim that lululemon later pinned the inventory shortfall on Ms. Choe's product decisions before and during the Class Period, prior to her departure. AC ¶ 176. This again rests on gross mischaracterizations of the Company's disclosures. In 2024, Mr. McDonald, with the benefit of hindsight, observed that the "most significant factor" in a recent slowdown (after the Class Period) in the women's business "was a product plan that introduced less newness across core and seasonal styles." Ex. K at 5. And in small sizes and color, Mr. McDonald did not assign any blame to Ms. Choe or link the earlier inventory shortfall to her departure. Most crucially, though, even if Mr. McDonald had in fact criticized Ms. Choe's performance, that would do nothing to show *contemporaneous knowledge* of an inventory shortfall in small sizes and color at the start of the Class Period. Plaintiffs' theory regarding Ms. Choe is both factually unsupported and legally flawed.[12]

As for the Breezethrough leggings, Plaintiffs do not plead that the Individual Defendants had actual knowledge of any supposed "design flaw" at the time the statements were made. AC ¶ 235. Nor could they: Plaintiffs do not allege that the leggings were defective—*i.e.*, that they did not serve their intended purpose—but rather allege that customers had a negative reaction to the

---

[12] *Compare* AC ¶¶ 145–46, 149–51 *with* Ex. K at 4–5; *see also* Ex. A.

design. *Id.* ¶¶ 198–200; *see In re Molycorp, Inc. Sec. Litig.*, 2015 WL 1097355, at *13 (S.D.N.Y. Mar. 12, 2015) (failing to plead "actual knowledge of [the product's] likelihood of failure"). And the idea that the Company would release a new product *knowing* that customers were unlikely to purchase it and *knowingly* misrepresent that to the public is not just unsupported by any pleaded facts; it is wholly implausible on its face. *See infra* Section I.B.

Lastly, the challenged forward-looking statements made by the Company (*i.e.*, the risk disclosures) explain the precise impacts if lululemon did not "accurately forecast guest demand for [its] products." Ex. B at 42; Ex. E at 12. Plaintiffs claim that these "hypothetical" disclosures were "no longer hypothetical, and in fact had materialized," as of the date of the disclosures. *E.g.*, AC ¶ 225. Plaintiffs do not point to *any* specific executive officer that made or approved such statements with actual knowledge that the risk had already materialized, much less any particularized allegation supplying the requisite *facts* as to what, when, and how lululemon failed to predict what aspect of future demand. *See In re Bemis Co. Sec. Litig.*, 512 F. Supp. 3d 518, 535 (S.D.N.Y. 2021) (no actual knowledge pled concerning alleged falsity of company projections). The Company's later statement that, in hindsight, it could have maybe made *more* sales with a *different* assortment of sizes and colors, Ex. F at 4, does not mean that it knew months earlier that a risk of a meaningful inventory shortage had already materialized.

## 2. Plaintiffs Do Not Adequately Plead That The Statements Of Opinion Were False Or Misleading.

Statements of opinion are actionable only if the speaker (i) "did not hold the belief [] professed," (ii) "supplied . . . untrue" "supporting fact[s]," or (iii) omitted information that made the statement "misleading to a reasonable investor." *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016) (citing *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186–87 (2015)). Meeting the *Omnicare* standard "is no small task for an investor," and

Plaintiffs have not remotely cleared the bar. *Omnicare*, 575 U.S. at 194. Plaintiffs challenge opinion statements, including "[w]e remain comfortable" and "feel pleased" with inventory, and "[w]e have some exciting new innovation coming in our leggings." AC ¶¶ 216, 218, 236.[13] These are archetypal opinion statements expressing subjective confidence in lululemon's inventory levels and excitement surrounding a future product launch. *See Sanofi*, 87 F. Supp. 3d at 531 (statements expressing "expectations for the future" constituted opinions); *Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 575 (S.D.N.Y. 2018) ("evaluative assessments" like "we're making visible progress," "doing fairly well," and "we feel like we've got a good handle on this" "are quintessential statements of opinion"); *Lefkowitz v. Synacor, Inc.*, 2019 WL 4053956, at *7 (S.D.N.Y. Aug. 28, 2019) ("we continue to make excellent progress toward the [product] launch" is a statement of opinion); *Frankfurt-Trust Inv. Luxemburg AG v. United Techns. Corp.*, 336 F. Supp. 3d 196, 227 (S.D.N.Y. 2018) (statements like "[b]ased on solid backlog and continued orders strength, we see topline momentum as we enter 2015," "we expect stronger commercial aftermarket in the second half of the year," and "on the right track" are opinion statements).

Plaintiffs plead no particularized facts demonstrating that the Individual Defendants did not genuinely hold their expressed opinions. Plaintiffs' allegations regarding the "nature" of the back-to-school campaign, the Nedap System, the Company's product decisions, or the design of

---

[13] *See also* AC ¶ 220 ("[G]uests responded well" to "product innovations"); *id.* ¶ 222 ("[W]e have not seen a dramatic shift" in behavior); *id.* ¶ 226 ("We are pleased with our performance during the holiday season, as guests continue to respond well to our innovative and versatile product offerings . . ."); *id.* ¶ 228 ("[W]e expect that . . . [chasing color and size] will continue to improve"); *id.* ¶ 232 ("We have a hydrogen yarn legging coming out in summer for yoga . . . that we see playing a positive through the back half of this year."); *id.* ¶ 236 ("[W]e're on track to bring significant innovation into our assortments . . . These include a new innovation design for hot, low impact workouts and made from a new performance fabric . . .").

the Breezethrough leggings do nothing to suggest that either Mr. McDonald or Ms. Frank did not genuinely believe the opinions they expressed.[14]  *See supra* Section I.A.1.b.

Nor do Plaintiffs plausibly allege that the challenged opinions were misleading by omission.  To plead this theory, Plaintiffs must "identify particular (and material) facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context."  *Omnicare*, 575 U.S. at 194.  An opinion statement is "not necessarily misleading when" the speaker "knows, but fails to disclose, some fact cutting the other way."  *Id.* at 189.  Plaintiffs' failure to identify *any* "facts going to the basis for [the] opinion[s]—facts about the inquiry [he or she] did or did not conduct or the knowledge [he or she] did or did not have"—let alone facts "whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context," is fatal to any attack under *Omnicare*'s "omissions" prong.  *Id.* at 194.  Further, a mere statement of optimism or confidence "does not create duty to disclose" every fact that could be used to support a contrary conclusion, because "there is no duty to update vague statements of optimism or expressions of opinion."  *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021).[15]

---

[14] Plaintiffs do not contend that any of the challenged opinions were accompanied by untrue supporting facts about inventory levels or the product launch.

[15] Plaintiffs therefore fail to plead any duty to disclose theory regarding the discrete product lines at issue in the challenged statements.  *See, e.g.*, *In re Yatsen Holding Ltd. Sec. Litig.*, 2024 WL 3498049, at *6 (S.D.N.Y. July 22, 2024) ("Allegations regarding a subset of these sales . . . do not establish that [] statements [concerning overall financial health] are misleading."); *In re Coty Inc. Sec. Litig.*, 2016 WL 1271065, at *10 (S.D.N.Y. Mar. 29, 2016) (no duty to disclose when no facts connecting the termination of a specific product line to a company's overall financial condition).

### 3.  Plaintiffs Plead No Particularized Facts To Demonstrate Contemporaneous Falsity.

Regardless of whether the challenged statements are forward-looking statements, opinions, or statements of current fact, Plaintiffs fail to allege "with specificity" that any statement was actually "false *at the time it was made*." *SUN, A Series of E Squared Inv. Fund, LLC v. Sundial Growers Inc.*, 2021 WL 4482276, at *6 (S.D.N.Y. Sept. 30, 2021).

*Inventory Statements.*  Plaintiffs contend that the Inventory Statements were false when made because lululemon failed in August 2023 to ensure an adequate inventory in sizes 0 to 4 and color to meet future guest demand and thus "lacked sufficient [inventory] quantities." AC ¶ 217. At the outset, the statements Plaintiffs challenge all relate to the Company's *perspective* and *projections* regarding inventory quality.  *See supra* Section I.A.1.  For example, Plaintiffs challenge Ms. Frank's December 7, 2023 earnings call statements that they "remain comfortable with both the quality and quantity of our inventory," and "feel pleased with the level and currency of inventory."  Ex. C at 8, 15.  Ms. Frank did not make any factual assertion about the Company's stock of any particular sizes or colors that could be objectively false, and instead simply recited (accurately) the Company's then-current assessments about its inventory levels for future quarters, while also disclosing that the Company's overall inventory was *down*.  *Id.*; *see, e.g.*, *City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*, 2024 WL 4349289, at *4 (S.D.N.Y. Sept. 30, 2024) (statements must be evaluated "by context and manner of presentation").  Here too, it is worth noting that Plaintiffs do not challenge the accuracy of a single factual metric about inventory that lululemon disclosed during the Class Period.

Even if, however, such subjective statements about general inventory allocations could be construed as conveying some objectively verifiable fact, Plaintiffs offer no facts to support their conclusion that the Company in fact lacked adequate inventory *at the time the statements were*

*made*.  Plaintiffs do not plausibly allege when the inventory shortfall allegedly arose, the magnitude of that shortfall at any given moment, what that inventory shortfall was, or when or how Defendants allegedly became aware of that shortfall.  Plaintiffs again rely on the Nedap System (AC ¶¶ 81–114), but that system did nothing more than provide customers with a current view of the inventory available at any given retail store—it did not, as Plaintiffs seem to assume, give the Company inimitable foresight into future inventory needs and consumer demand.  The Company's recognition in *hindsight* that it likely could have sold more products with different product and inventory selection, *see* Ex. F at 4, does not render past statements about inventory quality false or misleading.  *See Shanda*, 2019 WL 11027710, at *5.

Plaintiffs also assert that statements about positive guest response to its "back-to-school product innovations" and that "guests continue to respond well to our innovative and versatile product offerings" were misleading because they suggested "market share gains" were "sustainable" despite alleged inventory shortages in certain sizes and colors.  AC ¶¶ 220–21, 226–27.  But those statements do not imply anything about the extent to which current sales were "sustainable or improving."  *Id.*  And even if they did, Plaintiffs do not plausibly allege that such performance was *not* sustainable or *not* improving—lululemon hit its global revenue targets for each of the quarters in question, and the fact that the Company identified some opportunities for even *better* sales going forward does not mean its statements about current performance were false or misleading.  *See Peloton*, 2024 WL 4362747, at *11–12 ("no reasonable investor could have been misled by these purportedly false statements, because they were in fact, true," given the Company meeting "its quarterly sales guidance . . . throughout the Class Period"); *Shemian*, 2013 WL 1285779, at *18 ("Plaintiff not only provides no evidence to undercut the projections, but [the Company's] numbers were, in large part, actually proven correct").

Plaintiffs similarly fail to plead facts demonstrating contemporaneous falsity for the remaining Inventory Statements.  With respect to the December 7, 2023 statement that the Company had not seen a "dramatic shift" in demand, Mr. McDonald was responding to a question concerning guest "accelerati[on]" and "newness"—*i.e.*, introducing new products, not the inventory levels of existing ones.  Ex. C at 16–17.  In any event, none of Plaintiffs' allegations plead any factual support for the notion that there had been an undisclosed "dramatic shift" in demand—the Company later stated only that there were opportunities for greater sales in certain sizes and colors.  AC ¶ 167 (citing Ex. F at 4, 18).  And lastly, Plaintiffs never suggest that lululemon did not in fact "improve" its inventory assortment "starting in Q2" 2024.  *Id.* ¶¶ 228–29 (citing Ex. F at 18).

***Breezethrough Statements.***  Plaintiffs allege that the Breezethrough Statements were false because the product allegedly suffered from "obvious design flaws" and was only intended to be a "test and learn" product.  *Id.* ¶ 233.  Plaintiffs offer no allegations suggesting that any "design flaws" were recognized by anyone in the Company at the time the statements were made, much less that any internal assessments about the projected success of the Breezethrough leggings were inconsistent with publicly expressed sentiment.  *See Shemian*, 2013 WL 1285779, at *20–21 (no duty to disclose design defects where the statements are "too vague" and no facts alleged regarding "the existence and timing of Defendants' knowledge of defects").  Nor do Plaintiffs explain why a "test and learn" product would not lead to positive impacts in the back half of 2024, consistent with the Company's disclosures. And for the Breezethrough Statements that merely expressed "excite[ment]" and previewed a "new innovation" in "leggings,"  AC ¶ 236,  Plaintiffs plead no facts to suggest that the Company was not in fact excited for its Breezethrough leggings.

Moreover, Plaintiffs cannot explain why lululemon would launch a new product that it supposedly knew at the time would be disfavored by customers. *See infra* Section I.B.

   ***Risk Disclosures.*** Plaintiffs' challenge to risk disclosures explaining the potential impacts on sales and profitability if the Company failed to successfully forecast guest demand and launch new products (such as the Breezethrough leggings) also fails. *See* AC ¶¶ 224–25, 230–31, 234–35, 238–39; *supra* Section I.A.1.b. Plaintiffs fail to plead that lululemon did not "accurately describ[e] the present risk" posed to the Company at the time those risk disclosures were made. *Id.* ¶ 235; *see also Marcu v. Cheetah Mobile Inc.*, 2020 WL 4016645 at *6 (S.D.N.Y. 2020).

### B.  Plaintiffs Do Not Plead A Strong Inference Of Scienter.

   Plaintiffs' Section 10(b) claim is independently subject to dismissal for failing to plead facts giving rise to a "strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2). A "strong inference" of scienter is "more than merely plausible or reasonable" but, rather, "cogent and at least as compelling as any opposing inference of nonfradulent intent." *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). This requires a "comparative evaluation" of "inferences urged by the plaintiff" and "competing inferences . . . drawn from the facts alleged." *Id.*

   Plaintiffs' theory of fraud simply does not add up. Plaintiffs cannot explain why Defendants would intentionally decide *not* to ramp up inventory in select colors and sizes to meet supposedly known increased consumer demand. The more compelling inference is that Defendants did not perfectly predict where consumer demand would be and the exact inventory required to meet it. *See Golesorkhi v. Green Mountain Coffee Roasters, Inc.*, 973 F. Supp. 2d 541, 560 (D. Vt. 2013) (no scienter where the "innocent reading of the facts" shows that the Company "face[d] challenges anticipating demand and tracking its [] inventory during a period of such rapid expansion," which was "hardly surprising"). Plaintiffs have also failed to explain why Defendants would intentionally launch a product—and build up excitement and expectations for that

product—which Defendants supposedly knew suffered from obvious defects. *Cf. Sanofi*, 87 F. Supp. 3d at 544 (rejecting argument executives knew that a product "was fatally flawed. . . or. . . dead on arrival" while simultaneously "spend[ing] a lot of time and money on the product's launch"). The more compelling inference is that, despite its best efforts, lululemon did not get one of its new product launches exactly right. These are the realities of business—and the fact that hindsight can criticize these judgment calls does not give rise to an inference of fraud, let alone one that is "compelling."

Plaintiffs nonetheless try to square the circle by attempting to allege facts showing (i) "that defendants had the motive and opportunity to commit fraud" or (ii) "strong circumstantial evidence of conscious misbehavior or recklessness." *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022). Their efforts fall short.

### 1. Plaintiffs' Motive And Opportunity Allegations Are Insufficient.

To show scienter through motive and opportunity, Plaintiffs must allege that Defendants "benefited in some concrete and personal way from the purported fraud." *Villare v. Abiomed, Inc.*, 2021 WL 4311749, at * 21 (S.D.N.Y. Sept. 21, 2021). Here, Plaintiffs point to sales by Mr. McDonald and Ms. Frank of 25,000 and 1,553 shares, respectively of lululemon common stock on December 18, 2023. AC ¶¶ 240, 247–51. "[T]he mere fact that insider stock sales occurred is not sufficient to establish scienter; instead, a plaintiff must establish that the sales were unusual or suspicious." *Villare*, 2021 WL 4311749, at *21. But the factors that courts use to evaluate such sales, including "the percentages of holdings sold," "whether sales occurred soon after [challenged] statements," and "whether sales occurred shortly before corrective disclosures," fail

to demonstrate that Mr. McDonald's or Ms. Frank's stock sales were "unusual" or "suspicious." *In re Plug Power, Inc. Sec. Litig.*, 2022 WL 4631892, at *13 (S.D.N.Y. Sept. 29, 2022).

Most critically, the timing of the alleged stock sales cuts decisively against any inference of scienter.  Plaintiffs allege that the Individual Defendants sold stock *eleven* days into the nearly *seven month* Class Period, *i.e.*, when "the alleged fraud was only just beginning to ramp up."  *In re Iconix Brand Grp., Inc.*, 2017 WL 4898228, at *15 (S.D.N.Y. Oct. 25, 2017).  The stock sales occurred over *three months* before any alleged corrective disclosure, further undermining any purported suspicion.  *See Woolgar v. Kingstone Cos.*, 477 F. Supp. 3d 193, 235 (S.D.N.Y. 2020) ("[S]tock sales are not indicative of scienter when they are more than two months before the [corrective disclosure.]").  Further, Plaintiffs ignore the more compelling non-fraudulent explanation for the sales:  both Mr. McDonald and Ms. Frank exercised options on December 18, 2023—which, in Ms. Frank's case, were on the eve of expiration—and sold a matching number of shares the same day, as demonstrated by the Form 4s that Plaintiffs rely on.  *See* Ex. L (cited at AC ¶ 247); Ex. M (cited at AC ¶ 250).  Such "trading undertaken primarily to make payments required for the exercise of stock options or to pay taxes" is not indicative of fraud.  *In re Bristol–Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004).

Other undisputed facts concerning the stock sales further weigh against any inference of scienter.  Plaintiffs omit that both Mr. McDonald and Ms. Frank *increased* their total holdings during the Class Period.[16]  *See, e.g.*, *In re eSpeed, Inc. Sec. Litig.,* 457 F. Supp. 2d 266, 290 n.182 (S.D.N.Y. 2006) ("dozens of cases dismiss[-] complaints on scienter grounds where . . . motive allegations were undermined by increases in total holdings").  And while Plaintiffs suggest that

---

[16] *See* Ex. L; Ex. N; Ex. O; Ex. P.  *See In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 276 (S.D.N.Y. 2008) (judicial notice of Form 4s to determine whether stock sales were sufficient).

the relevant stock sales accounted for 25.3% and 15.6% of Mr. McDonald and Ms. Frank's holdings, respectively, AC ¶¶ 248, 251, this is "inaccurate because [it] do[es] not account for the stock options held." *eSpeed*, 457 F. Supp. 2d at 290. Including vested options, Mr. McDonald's stock sales actually accounted for only 18.6% of his holdings. *See* Ex. L. Inaccuracies aside, the size of Individual Defendants' sales are insufficient as a matter of law. *See, e.g.*, *In re Travelzoo Inc. Sec. Litig.*, 2013 WL 1287342, at *9–10 (S.D.N.Y. Mar. 29, 2013) (sale of 22% of stock insufficient); *In re Skechers USA, Inc. Sec. Litig.*, 444 F. Supp. 3d 498, 525 (S.D.N.Y. 2020) (sale of 65.1% of stock insufficient in light of other factors).

### 2. Plaintiffs' Circumstantial Allegations Of Recklessness Are Insufficient.

Failing to plead motive, the strength of Plaintiffs' circumstantial allegations of conscious misbehavior or recklessness must be "correspondingly greater." *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 300 (S.D.N.Y. 2019). The Complaint must allege "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 421 (S.D.N.Y. 2020). Recklessness cannot be "merely enhanced negligence." *Steinberg v. Ericsson LM Tel. Co*., 2008 WL 5170640, at *12 (S.D.N.Y. Dec. 10, 2008). Plaintiffs advance an assortment of attenuated theories that do not pass muster.

***Corporate Positions And Core Operations***. Plaintiffs contend that "by virtue of their high-level positions," the Individual Defendants "were directly involved in the day-to-day operations of the Company," and therefore "recklessly disregarded" the dissemination of alleged misstatements. AC ¶ 267. Such conclusory allegations based on the seniority of individual defendants are "entitled to no weight." *In re Rockwell Med., Inc. Sec. Litig.*, 2018 WL 1725553, at *14 (S.D.N.Y. Mar. 30, 2018). Nor is it sufficient for Plaintiffs to allege that U.S. women's

products were a "core operation" of lululemon.  AC ¶¶ 3, 40–54.  At most, allegations about a company's "core operations" "constitute supplementary, but not [] independent, means to plead scienter." *Holbrook v. Trivago N.V.*, 2019 WL 948809, at *22 (S.D.N.Y. Feb. 26, 2019).  Here, while the Company was interested in the performance of its various product lines for women in the United States, that does not establish that the specific subsets of products at issue here "constitute[] nearly all of [its] business." *Woolgar*, 477 F. Supp. 3d at 239; *see also In re Barrick Gold Corp. Sec. Litig.*, 341 F. Supp. 3d 358, 374 (S.D.N.Y. 2018) (one of five gold mines, collectively accounting for 70% of the Company's production, was not "core").

 ***Knowledge Theories.***  Plaintiffs rely on the Nedap System, back-to-school campaign, and Ms. Choe's inventory purchases to support their theory that Defendants "knew, or should have known," that lululemon lacked sufficient inventory to meet future demand in sizes 0 to 4 and color. AC ¶ 269; *see id.* ¶¶ 268, 271.  But for the same reasons explained above regarding actual knowledge and falsity, none of those allegations support an inference of recklessness. *See supra* Section I.A.1.b; *Renewable Energy*, 2022 WL 14206678, at *2–3.[17]  The same is true for Plaintiffs' theory regarding the supposedly "obvious design flaws," AC ¶ 272, of the Breezethrough leggings. *See supra* Section I.A.1.b.

 ***Corporate Scienter***.  Plaintiffs also fail to plead scienter on the part of any lululemon employee that could be attributed to lululemon.  *See supra* Section I.B; *Francisco v. Abengoa, S.A.*, 481 F. Supp. 3d 179, 214 (S.D.N.Y. 2020).

---

[17] To the extent Plaintiffs point to Ms. Choe's resignation to support scienter, *see id.* ¶¶ 182–83, that theory is unavailing.  *See In re Veon Ltd. Sec. Litig.*, 2018 WL 4168958, at *19 (S.D.N.Y. Aug. 30, 2018) (resignation "is insufficient alone" to support scienter).

C.    **Plaintiffs Do Not Plead Loss Causation.**

Finally, Plaintiffs claim that the "truth" regarding the Inventory Statements was revealed on (i) March 21, 2024 when the Company reported that it had seen "strong sell through of [its] smaller sizes" and colors, AC ¶ 167, and (ii) May 21, 2024 when the Company announced the departure of Ms. Choe. *Id.* ¶ 180. To be sufficiently corrective, a disclosure must "reveal to the market the falsity of the prior [disclosures]." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 n.4 (2d Cir. 2005). Neither of the alleged disclosures, however, satisfy this standard. The March statements observed the "strong sell through" based on what the Company was "seeing in the business" in "***quarter one*** of 2024," and reveal nothing with respect to the rest of the Class Period. Ex. F at 4. And the May announcement merely disclosed that Ms. Choe "resigned . . . to pursue another opportunity" which has nothing to do with the alleged fraud. Ex. Q at 1. Plaintiffs allege that the "truth" regarding the Breezethrough Statements was revealed on July 24, 2024 when lululemon announced that it had made the "decision to pause on sales" of its Breezethrough leggings. AC ¶ 204 (citing Ex. R). This announcement says nothing to indicate that the Breezethrough *leggings* had "obvious design flaws" or were launched on a "test and learn" basis, such that any earlier statement was revealed to be false. AC ¶¶ 203, 205; *see* Ex. R.

II.    **PLAINTIFFS FAIL TO STATE A SECTION 20(a) CLAIM**

Plaintiffs have failed to plead an underlying "primary violation" of Section 10(b) or culpable or culpable participation by the Individual Defendants for all the reasons stated above, and therefore Plaintiffs' control person claim fails. *Ark. Pub. Emps. Ret. Sys.*, 28 F.4th at 356.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety with prejudice.

Dated: May 19, 2025

Respectfully submitted,

*/s/ Caroline Hickey Zalka*
Caroline Hickey Zalka
Tanner S. Stanley
Amber N. Venturelli
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10053
Tel: (212) 310-8527
Caroline.Zalka@weil.com
Tanner.Stanley@weil.com
Amber.Venturelli@weil.com

Joshua M. Wesneski
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: (202) 682-7000
Fax: (202) 857-0940
Joshua.Wesneski@weil.com

*Attorneys for Defendants lululemon athletica*
*inc., Calvin McDonald, and Meghan Frank*